Our first case out this morning is number 417-0221 for a marriage of Buhlig. Did I pronounce correctly? For the appellant is Amanda Bradley. You're a she. And for the appellee is David Liefers. You're a he's. Ms. Bradley, you may proceed. Good morning. May it please the court. Counsel. Counsel. My name is Amanda Bradley, and I represent Clark Buhlig, the appellant to this action. In the divorce, he was the respondent. However, to keep him simple, I'm going to refer to him as Clark, and the petitioner, the appellee, is Lynette. I personally always prefer it. Because when I read briefs, it must take me very long before I forget which is which if I don't use their names. So thank you for doing that. Now, I will only refer to the children by their initials to stay in compliance with the Supreme Court rules. The parties started their divorce in 2011 after a relatively short marriage. The marital estate was dissolved in May of 2012 when a grounds order was entered. The case was tried over the summer of 2012. Both filed position statements. Of note, in Lynette's position statement, she stated that she waived maintenance so she could live in the house that had once been part of the marital estate. And Clark wanted then a right of first refusal to purchase the same. Prior to their divorce, they had had it appraised. The first order in 2012 stated exactly that, that she waived maintenance and it was based on her position statement. From there, post-trial motions followed. Lynette wished to reserve the idea of maintenance and have the right to the home until the youngest child, or until her youngest child turned 18. And in part because one of her children, AB, has autism. The matter was finally resolved in August of 2013 after several more court dates. The maintenance waiver had to do with their home, correct? No, it had to do with she was not going to get a monthly sum of money from Clark. And instead of taking a monthly sum of money, she was going to get the home.  Not for good, that is correct. Because it had been in his family for 150 years, so it had always been intended, had it not. At some point in time, he's ultimately going to get the home. That is correct. Lynette's counsel ultimately drafted the August 2013 order that was entered by the court that closed the case. Clark, notably, was given only a first right of refusal. Lynette was... Counsel, what do you mean by right of refusal? To me that implies that she owned the home, and if she decided to sell it, then your client would have the right of first refusal after a price was established. They purchased the home, actually, during their marriage out of Clark's family and took a mortgage jointly. And they were both on the deed. So, if they wanted to try to sell it, he would have the right to match a potential seller's price or to offer her any price that would pay off the mortgage and take it back into his family. It's not defined elsewhere. It simply says a right of first refusal. It's at A31 and C91. Notably, also, maintenance was not reserved. Lynette wanted to reserve maintenance in her post-trial motion, but ultimately in the order that her counsel drafted, the issue of maintenance is not reserved. This is the second time you've mentioned that the court's order that counsel drafted. What do you mean by that? Well, any ambiguity in a final judgment of dissolution of marriage, because a judgment of dissolution of marriage is like a contract, is construed against the drafter. Well, the problem is, this is not a contract between parties. This is the order of the court. So, what side is the court on when you suggest that anything is construed against the draft of the contract? I was a trial judge for a long time. When I asked parties to submit a draft order, I would consider whether or not this accurately reflects my findings and what I thought was appropriate. And if one party didn't submit it, had a problem with it, they have to raise it. Otherwise, by signing it, it becomes the order of the court. It doesn't matter where it comes from. Indeed, sometimes I didn't like it and would prepare my own order. Do you have any authority on behalf of the notion that the person, the party, or the lawyer who submitted a draft order to the court, that somehow this analysis you just mentioned applies? Absolutely. The analysis starts with Weiland's tool. There, an attorney does draft a contract. It is not a judgment of dissolution. It's simply a contract. And any ambiguities in that case… You brought up the point that I'm talking about a court's order, not a contract between parties. Where a party or lawyer submitted an order to the court and the court has agreed to it and adopted it, that that somehow is still the same analysis as if it were a contract. Yes. That would be Gallantine that I cited in my brief. There, the court held that the application of an ambiguity should be construed against the drafter, and that is a marriage case. But the court could have also ascertained the intent of the parties. However, again, that's a judgment of dissolution of marriage case. There, the parties did settle. The court signed the judgment of dissolution of marriage. It is the last several paragraphs. I do have a copy, reduced to four to one, if the court would like it. So the third district in Gallantine says that the court's adopting a proposed judgment order, that ambiguities in it are construed against the parties who submitted it? That is my reading of Gallantine. Well, the wonderful thing about being on the appellate court is we need not follow decisions of our sister districts. Indeed, the only one we're required to follow is the Supreme Court. Why should we? Why does that make good sense? It makes good sense because it puts an onus on us as practitioners to draft carefully to make sure that we have clarified all of the ambiguities. There are wonderful tools out there for us. Some of them prepared by ICCL, some prepared by ISBA, to ensure that we're not putting in trouble. Were you trial counsel in this case? I was not. Okay. Mr. Diefers was? He was secondary trial counsel. Well, the point being, when Lynette's lawyer submitted this proposed order to Judge Day, Clark's lawyer could have said, well, Judge, this is not the ruling that you've indicated you were going to make. Isn't that right? Yes. Okay. And by not doing that, then why hasn't Clark's lawyer essentially abandoned this position so that when the judge enters the order, it's entirely neutral? There's no question about any inferences to be drawn against the drafter. I wouldn't know I wasn't trial counsel in 2012 and 2013. The way I read it is that the original waiver of maintenance came from her position statement. Then the trial court adopted that and drafted its own order in 2012. She wished to reserve it, and it was ultimately not reserved in the order that her... Well, counsel, I apologize. I don't want to take up all your time at this point. You've emphasized this twice. I can't speak for my colleagues, but I find it singularly unpersuasive as to who drafted the order that the court entered. So, go ahead. So what was the right that Lynette was given? There's no expressed language in the 2012 or 13 order finding that she has a maintenance right. Rather, she's given the right to live in the home on the basis of the minor child's A-B's needs. Menhir would say that it would require the order to have something finding a maintenance. Some of the 504 findings, that she's unable to work, to have a maintenance order. Instead, it's a property allocation, which is generally not reviewable unless otherwise explicit under 510. Here, it was explicit. When the court states it will be reviewed annually, you get around the non-reviewable under 510. Gallantine and Meyer both have similar rights. In Gallantine and Meyer, the ex-spouse is given the right to live in a home for a period of time, and the other party is going to pay the mortgage amount. The courts in both the third and the fifth said that is a property right. Gallantine and Meyer do differ because those property rights were not reviewable. Further, Lynette did waive her maintenance right. It was her intent to have a house to live in with bills paid. There was no ambiguity when she stated repeatedly she did not want maintenance given to her in her position statement, and then abandoned her position out of her post-trial motions. She knew it wasn't reserved because the case was closed in August of 2012. Again, what is reviewable is her right to tenancy. Counsel, when your client filed his petition in April 2016, did he not ask to terminate his maintenance obligation? I believe he called it espousal support, but yes. Well, it seems like to me you're taking inconsistent positions. Yes. Okay. How can you take a position at the appellate level that's inconsistent with the position you took at the trial level? I believe the motion to reconsider says whatever it is, we want it terminated in maintenance. A new maintenance obligation is not appropriate of a dollar amount. We want whatever obligation this is to provide for Lynette's living, whether it be by paying her propane and her mortgage, or by giving her money to terminate. And I think that that is not inconsistent. Next. The court in 2016 and 17 did not modify the judgments of 2012 and 13 through the use of a non-protunct order. Yet this is what it appears it has done. Non-protuncts exist to correct errors. For example, forgetting a zero. So if everybody understands that the court meant to write $10,417, the oral order reflects that. The written order has a blank, 10, a blank, 417. A non-protunct could be used to supply that zero to amend the order to reflect what was actually intended. Non-protunct does not exist to correct an error in judicial thinking or to otherwise modify an order like this. Some provisions in original judgments of dissolution of marriage are modifiable, such as child support, maintenance obligations, and any reviewable property allocation. But for a property allocation to be reviewable, it must be reserved. The court is only left with the ability to enforce that which was done and not create new obligations. Here, however, we have two new obligations. In re-marriage, Mathis says that once parties are divorced under 503F, the date of the marriage says that is the final date for the value of the marital estate. Even when there is a disagreement of interpretation, the marital estate ceases to exist, and any value that is added through the efforts of another cannot be attributed to the now non-spouse. Has the statute changed since the Mathis case? The statute has not changed substantially except for to include – it did change some when civil unions, and now it simply is all about marriage because – and I think it still does include civil unions. That I can't remember, so I apologize on that one. However, again, when the court says the equity will be determined on the sale in 2017, it is basing it on the idea that the value could go up or could go down. From 2013 through 2017, Clark made mortgage payments. Contained in the mortgage payments are payments on the principal and interest. Payments on the principal reduces how much is owed to the bank. That could increase the equitable amount to divide. Lynette did not make mortgage payments during that time. That amount of money cannot be given to Lynette. She is not a spouse of Clark. Blumenthal, Inres, Scarlett, ZD say the trial courts cannot create new rights later. There are some assets that cannot be valued as of the date of dissolution. Pensions are a big one. However, that is the passive growth of income that will be determined at a later date. It is not active contribution by somebody who is a not spouse anymore to make it grow further. That is simply the addition of interest and time to make that pension bigger. Further, by waiving maintenance in 2012 and 2013 and not reserving that right by appealing or doing anything else to preserve her maintenance right in 2013, and yet being granted one four years after she is married, the trial court has said that she has continued to be his spouse. Only when you have a spouse or a civil union can maintenance rights flow. You cannot start a new maintenance right when you do not have a spouse. The trial court also did not have properly before the questions of child support or attorney's fees. Under 510, to get properly before trial court for questions of child support or attorney's fees, you must file a proper petition. Petition is not an answer. It is an actual petition to put somebody on notice that their rights could be substantially changed. There is a reason that our Supreme Court rules are different for petitions or motions and answers. Allowing surprise at trial to come through an answer or a reply, as in this case, simply undoes that. Fox, Alea, and Otwell all stand for this. In each of those cases, the orders that came from the trial court contained reliefs that were not contemplated by a person. They were not notified that these substantial rights could be changed. The reason for petitions, again, is to put one on notice. Trial counsel appears in the record to be taken aback when the questions of child support and attorney's fees were actually up. Was there an objection to the trial court entertaining those issues? There was. What does that objection mean? It reads something like, we're taking that up. I was not aware there's not a proper petition on file. Okay. And then that's a query to the court. Was there a follow-up? I object to proceeding to having a hearing on those issues. Yes, there was. She did object, but did continue the hearing on those and said, they're not properly before the court. I do object to those coming up today. When the court issued its child support order, it didn't make any indication that there was an actual change of circumstance, nor did it reduce the child support order to an actual dollar figure. With respect to the attorney's fees, there was no analysis done under 508, as he wrote in his practice today. I want to go back to what you were talking about, the maintenance, how parties aren't married, it's over, and the court can't revisit or impose maintenance, because, correct me if I'm wrong, but it wasn't the position of your client that consistently for years that the marital residence and his payments related to them were reviewable rehabilitative maintenance. That was his original trial position. Until like a year ago? And I believe his position in his motion to reconsider was, they are an obligation, I want some form of credit, and I want it to stop. But I'm not real sure what they are. Well, how is it then that you can, he, Clark, can make this argument to the trial court, and on appeal, say, oh no, this wasn't maintenance, you didn't have the authority to do any of this. It seems to me that this isn't just a matter of acquiescence, it's a matter of where Clark essentially was empowering the court to take the action the court did, because that was the argument he was making to it initially. And of course, in petitions to reconsider, you can't change your earlier position. It's like a petition for re-hearing before the appellate court. In your time's up, I want to give you an opportunity to respond to this. I think by making an order for maintenance when there is no spouse, the trial court, even though it was induced by Clark, was acting outside of its subject matter jurisdiction. It would be no different than ordering two strangers to pay maintenance to each other, because at that point, while they are parents to three children, they are, spouse-wise, legal strangers. And without a marriage... So this is a court had no jurisdiction argument? That would be one way to consider it. I did argue about the questions of justiciability briefly and didn't expand further upon it. You'll have an opportunity to address this in your rebuttal. Thank you. Thank you. Okay, Mr. Liefers? Thank you, Your Honor. Excuse me, did I pronounce your name correctly, Liefers? You certainly did, Your Honor. Okay. I must be very forgettable. I've appeared before, Your Honor, before. Well, but it's the names that... It's a cardinal name. What can I say? Okay. Okay, please, the court. Counsel. Counsel. Your Honor, I don't want to spend much time on the point you were raising with counsel with regard to the interpretation of an order drafted or signed by the court. Rather, it's held against the drafter. But two points. Number one, the Gallantine case that she cites in support of the position that the judgment is to be construed strictly or against the drafter isn't based upon Gallantine because that really involved the construction and interpretation of a marital settlement agreement that was created by the parties. That's number one. And number two... So the court simply approved the marital settlement agreement submitted by the parties? That's absolutely correct. All right? And number two, I find no support in the record for even the suggestion that Lynette's original trial counsel prepared that order. None. What I see on the last page of the order is that both attorneys that were originally involved in this case signed off on the order as well as Mr. Buhlig. So be that as it may, look it. The court asked an interesting question a moment ago. How can Clark's position so dramatically change once, in effect, he got what he wanted? What he wanted was he wanted the court to interpret its original orders to provide Lynette with reviewable maintenance in the form of possession of the properties and the provision that he maintained her insurance policy. My original position, which is contradictory to what I'm taking here, handedly, Judge Day having entered the order that he did, we decided that, in fact, he was probably correct. All right? And so, essentially, Clark vigorously argued that this was reviewable maintenance. I can't even count the number of times in position papers, pleadings, he called this reviewable maintenance, reviewable maintenance. The possession of the home was an element of reviewable maintenance, which, in his counsel's words, basically meant that it was tied into Lynette not only A.B.'s autism and her need for a continued structured environment, but it was tied into financial assistance to Lynette because she had A.B. and she had the issues with regard to all three children. Plus, it was certainly in the nature of maintenance for him to be ordered to pay the mortgage payment. Now, counsel suggested maybe he should get some sort of credit for that, but if it's in the nature of maintenance, when we talk about the equity of the marital home, but if it's in the nature of maintenance, he would get no such credit. The payment of the propane bill for each month, the payment of the water bill for each month, the payment of the electric bill for each month, those were in the nature of spousal support. And what Judge Day was asked to do at Clark's request was to interpret his previous orders, find that it was reviewable maintenance, and his position was that reviewable maintenance should be terminated. Of course, once you open those can of worms, one possibility is that it's not terminated, but it'd be shifted to a different form, a different amount. And that's exactly what Judge Day did. So sometimes you do get what you want. You may not like the end result, but you get exactly what you want. Contrary to what the Rolling Stones sang. I'm sorry. I was thinking about that this morning. I had to do that. Last time I was quoting Gertrude Stein. Well, this is the right generation for it that you're arguing to. Everybody knows what I'm talking about. Yes. All right. So essentially, Judge Day was called upon to interpret his original orders. The function of that is to find his apparent intent. He was the trial judge originally. He was the post-motion judge, or post-trial judge, if you will. And he was in a unique position, I think, to determine what he actually intended. Now, is some of the wording a little less than what I would have hoped for? The answer is yes, obviously. But in his December of 2016 order, he specifically recognized that he would have no authority to modify a property settlement agreement. Then what he did, he went on and basically, and he also recognized Clark's position that he would have the authority to modify reviewable maintenance. And so what he went on to do is to do exactly what Clark asked him to do, insofar as it related to maintenance. He modified it. He gave Clark, if you will, eventual possession of a real estate. Lynette was required to be out of there by August of 2017. He terminated Clark's responsibility to pay the entire mortgage payment, required Lynette to pay half of it while she was still in possession. He terminated the requirement that Clark pay the utility expenses. And he terminated the requirement that Clark maintain her honor insurance, which I wonder whether or not he could have done that in the first place. But nonetheless, that was the order of the court. And so essentially what he determined to do, and by the way, counsel said in her brief, and she said it again today, that Judge Day made no initial 504 findings relative to maintenance. Well, that's true. But as Your Honor pointed out, whoever prepared the final judgment and presented it to them, counsel on the other side, in this case Clark's counsel, or for that matter, Lynette's counsel, could have insisted upon the inclusion of such findings. And they didn't. So if Judge Day erred, if you will, with regard to the original order, that was waived because it was never appealed for. So possession of the real estate, the payment of the utility expenses, and that type of thing, and the insurance was the nature of counsel's support. And that's what the case, I think, tells us to do, is to look not so much at the labels, but the nature of the obligation itself. And that's exactly what Clark was ordered to do. He wanted it modified. He wanted it terminated. Well, it was modified, but it wasn't terminated. And I think that the judge had the authority and the jurisdiction to modify the previous order. With regard to the equity in the house, counsel has stated in her brief, and she may have referred to this a little bit with regard to an earlier argument today, she said that the court found that the equity in the house was the difference between the appraisal and the mortgage payoff. The court never found that. That doesn't exist anywhere in the court's order. What the court did say is that Clark had the right of first refusal. That was based upon Clark's position paper, which said if it's awarded to Clark, he would pay $15,000, which interestingly was less than 50% of the equity in the home at the time. If it was awarded to Lynette, then he wanted the right of first refusal in the event she ever decided to sell it. That's exactly what he said. The right of first refusal that's referenced in the judgment doesn't expressly state the terms of that right of first refusal. As Justice Turner pointed out, basically bottom line is what a right of first refusal is is that Lynette ever decides to sell her interest in the home, Clark had the right to match that offer. That's exactly what that implies. Unfortunately, the court didn't fill in the blanks on some of this. That's exactly what he was called on to do by both Clark and his petition, which basically said that he wanted to force Lynette out of the house, I'm paraphrasing obviously, and that he basically paid her equity as determined, which again, his position was $15,000. Now, according to the brief, I'm not sure I understand his position. Does she get half the equity now if it's reversed? Does she get $15,000? Or as suggested in the brief, does Clark just simply have to pay off the mortgage? Don't know. But Judge Day resolved that problem, resolved that ambiguity in the original order, and I think the original order was appropriate. The issue with regard to the child support, I've tried a lot of these cases, and I'm the first to admit that my pleading in this case was sloppy, all right? But what the statute does require is a motion. And the purpose of that motion is to, let me find my notes, but the purpose of that motion is to basically present, define, and narrow the issues that limit the proof of trial and to ensure that the opponent has sufficient time to respond. Now, could I, and I think the statute actually speaks in terms of motion today as opposed to petition, but could I have filed a motion separate? Sure. Could I have labeled something a counterpetition? Sure. Would it have made a substantial difference? No. Would it have affected the outcome? No. But what the, you know, we filed that in August of 2016, and the matter wasn't called up for hearing until October 31st. If Clark objected to the form, if he objected to the pleading at all, which included, as did the original petition, a request for attorney's fees, then he could very well have filed a motion. As we all know, the Code of Civil Procedure generally requires any problems that you have with the pleading should be brought by motion. But he didn't. So there was a pleading, if you will, on file that addressed the issue. Now. What was it entitled? Pardon me? What was it entitled? I'm sorry. What was the pleading entitled? The pleading was entitled in answer. All right. And at the end of it, what I did is I alleged further that there had been a substantial change in circumstances based upon Clark's income. All right. And that child support would, should be reduced. The interesting thing with the ultimate order entered in the credit for maintenance under the old statute, with the credit for maintenance, is child support was reduced from $370 a week until $300 a week. All right. At the hearing in October 31, were the points you raised a relief you sought addressed by the court? Yes. Specifically, Ms. Day, who was then trial counsel, Ms. Day was asked by Judge Day as to what was before the court, and she said that her petition for review of, you know, terminating reviewable maintenance. And I also brought up to court that there was also the issue of child support. Nothing else was really said at that point in time. The next time we'd gone through the evidence, Lynette had testified as an adverse witness, Clark had testified. I brought, I recalled Lynette, and I think it was during her testimony, no, it was during Clark's testimony on my exam, I specifically was asking him about a savings account that he had. Because what had happened, even though he had prepared an affidavit, even though that affidavit didn't prove to me, counsel at trial chose not to introduce his financial affidavit. So, frankly, Judge Day had no evidence other than income evidence, no evidence with regard to his monthly expenses, no evidence with regard to his assets. And that was Clark's choosing. But anyway, at that point, counsel objected on the basis of relevance. And again, the child support was raised, okay? My argument was the child support. And I forget if it was at that point in time, I think it was maybe a little bit later, where she basically said she objected to a hearing on the issue of child support until the issue of maintenance is determined. That's what she said. That's because she felt that there may be some maintenance, I suppose, and she would be unable to come up with the calculation because we wouldn't know what the maintenance credit would be. But that was his only complaint, even in his post-trial motion. His only complaint was that Judge Day had said the child support would be calculated in the manner as I calculated, as I proposed it. Well, in my written closing argument, obviously I didn't know what the judge was going to do with regard to the issue of maintenance. So what I did do is I basically calculated what child support should be. And by the way, even though there's no finding of a substantial change in circumstance, his income from 2011 to 2012 had increased by $35,000 a year. Compared to 2012, compared to 2016, and that's the year that the judge used, the income increased from like $82,000 to $106,000. So certainly there's support in the record for his determination that there had been a substantial, or his implicit finding, if you will, that there had been a substantial change in circumstance. But his only complaint in his post-trial motion that Clark made at that point was that there was no set amount. So in my post-trial motion, I proposed a set amount. And that was giving Clark full credit for maintenance, and plus recalculating his tax liabilities, because the maintenance obviously reduced his income tax responsibilities. We actually had a hearing on both post-trial motions. And what the court ultimately did is that in March of 2017, he entered an income withholding order setting child support at $300 per week, which was 20 cents a week less than what my proposal was. So there is an order setting child support. So I think, Your Honor, that the issue of child support was properly before the court. Clark had 80-plus days from the filing of that reading until we had a hearing in which to either file a motion or to prepare for that particular issue. So your position is that Clark forfeited any objection he had to the courts pursuing this issue? Absolutely. He could have simply asked for a continued. He could have claimed surprise, not feigned, claimed surprise, and made a motion to continue. Counsel, just to clarify, as a result of this hearing, Clark's child support obligation was actually reduced? Actually reduced, Your Honor. It went from the original order was $370 per week, and that was based upon Clark's first position paper, which calculated it, based upon I think his 2011 income. And with the credit for maintenance, it went down to $300. So I suppose if you were to reverse Judge Day on that particular point, I better watch my life, on that particular point, I suppose it just reinstated $370 a week. I don't know. Now, with regard to the, oh, by the way, Fox, Otwell, and Naya relied upon Clark. Do not help his position, in my estimation, in this case. Fox was a petitioner to show cause for visitation, and the trial court changed custody. No notice of that whatsoever. Otwell, there was no pleading to modify his support and no notice of hearing. There was an action brought by the state's attorney of that county to enforce support. The recipient's mother didn't receive any notice. There was no pleading, so obviously that was a void order. And Naya, there was no pending pleading regarding custody, and yet the trial court ordered custody when the mother had no notice that was even set for hearing. With regard to the issue of attorney's fees, basically, bottom line, 508 refers to 503J. 503J refers to the 503 factors on the distribution of marital property. We don't want to apply those factors to the case of Clark, because the divorce was three years before this, but just looking comparatively at the assets of the parties, Lynette had $10 in her checking account, whatever interest she had in the real estate that Clark also had. That's virtually it. Those were her assets. They had divided his contributions to IMRF, and they had divided a tax refund, and I think she got about $13,000 as a result of that several years before. Clark, on the other side of the coin, had $11,000 in his account. I think the court implicitly considered 503 for 504 factors with regard to maintenance, as he did when he set maintenance in his ruling in December 2012. We're asking that Your Honors affirm the order of Judge Day. Thank you very much. Thank you, counsel. Ms. Gravey, any rebuttal? Yes. Okay. When the matter came up for hearing on October 31, 2016, the original notice of hearing is found at C-123. It was continued a few times, but the original notice of hearing at C-123 only calls up for hearing a petition for review and modification. Further notices of hearing that are contained before the hearing on October 31, 2016, say further hearing, and they are all prepared by Clark's trial counsel. But here's the point. If there's a notice of a hearing on Subject X, and at the hearing the attorney goes into pursuing Subject Y, isn't the burden on the other party to say, wait a second, Judge, Subject Y is a part of this proceeding, and I object to the courts considering anything here? Which, again, at the very beginning of the hearing, Ms. Day does state, well, it was noticed up for hearing on my motion for review. And the court says, well, we're going to take it up on everything that's pending, and that would include Lynette's response. Again, her pending, what was filed by Lynette in 2016, were responses. They're styled as answers. They say, I admit, I deny. Well, I understand all that. But I'm saying, isn't Lynette required her counsel at some point to say, wait a second, this is a subject that wasn't called up. That's not what we indicated. It's buried somewhere in his answer, and we're not prepared. Yes. Having said none of that, hasn't this objection to his subproceeding been forfeited? I think it was preserved between R338 and R340, where she said, well, it's just on my notice of hearing. It's on my motion to look at. That's right, but that doesn't constitute an objection to the courts going forward and hearing evidence and addressing all of this. Certainly, it's rather short of the vigorous attack on these proceedings you're making now, isn't it? It is rather short of it. Go ahead. With respect to attorney's fees, a trial court is supposed to look at what is the financial reality of the person's requesting attorney's fees, both before and after any court's orders for maintenance or child support. The trial court is supposed to ask questions of, does this person have the ability to pay? Can they make payments to their attorneys? And does the person being requested to pay the attorney's fees have the ability? The court didn't ask those questions of the after, when it stripped my client, Clark, of his financial abilities by taking approximately $1,000 a week from his income. There were no 504 findings in 2012 and 2013 for maintenance to flow. Lynette waived it, and the trial court cannot create a new maintenance right now between people who are not married and not in a civil union. As such, I would ask the court to find and reverse all of the trial court's order from December of 2016 and send it back with instructions. Thank you, counsel. The court takes this matter under advisory of the regents.